L. S. Randolph v. Commissioner.
Randolph v. Commissioner
Docket No. 108629.
United States Tax Court
1942 Tax Ct. Memo LEXIS 22; 1 T.C.M. (CCH) 258; T.C.M. (RIA) 42666; 12/21/1942
*22 Fenelon Boesche, Esq., Bradford J. Williams, Esq., Roscoe E. Harper, Esq., and Richard P. Ryan, Esq., for the petitioner. E. G. Sievers, Esq., and L. R. Vanburg, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: The respondent has determined deficiencies in petitioner's income tax for 1938 and 1939 in the respective amounts of $961.94 and $330.57. The only question in issue is whether certain oil and gas royalties which petitioner owned became worthless, giving rise to deductible losses, during the years involved. The essential facts pertaining to the acquisition, location and history of the oil and gas royalties involved have been stipulated. It has also been stipulated that certain portions of the evidence submitted in two prior cases, , promulgated November 18, 1942, and , promulgated December 9, 1942, shall be considered as evidence in this proceeding. [The Facts] Petitioner has his residence and principal office in Tulsa, Oklahoma. He is engaged in the business of acquiring nonproducing oil and gas royalties for investment purposes. He keeps *23 his books and makes his income tax returns on the accrual basis. His returns for 1938 and 1939 were filed with the collector of internal revenue for the district of Oklahoma. During the year 1938 petitioner charged off in his books an amount of $12,303 representing the cost or adjusted basis of a total of 27 oil and gas royalties. He claimed a loss deduction of all but $170.50 of that amount in his return for 1938. During 1939 he charged off $5,257.54 representing the cost or adjusted basis of nine additional oil and gas royalties, all of which he claimed as a loss deduction in his return for that year. The parties have stipulated that eight of the royalties charged off in 1938, in the amount of $1,892.50, and one of those charged off in 1939, in the amount of $500, described in paragraphs (n), (t), (u), (v), (w), (x), (aa), (dd), and (ii) of the petition, did not become worthless in those years and that no deductions are allowable on account of such royalties. The remaining 27 royalties were located in Oklahoma, Illinois, and Kansas. They represented for the most part fractional royalty interests in tracts under lease to various operators. Petitioner usually acquired these royalties *24 in areas where development was about to take place. When a dry hole was completed on or near his royalty and the operator abandoned the premises he considered that his royalty became worthless and charged it off as a loss. Maps were submitted in evidence as a part of the stipulation of facts showing the location of each of the royalties involved, the oil and gas development in the area of the royalty, and the dry holes, if any, which petitioner considered determinative of the worthlessness of his royalties. In addition to the stipulated facts several witnesses gave oral testimony as to the value of the royalties at the close of the years in which they are claimed as losses. From a careful study of the evidence of record we have determined, and we find as a fact, that all but four of the 27 royalties in dispute in this proceeding became worthless during the years when charged off by the petitioner. The 23 royalties which became worthless during the taxable years are described in the stipulation of facts as Nos. 243, 210, 196, 234, 153, 180, 181, 182, 231, 235, 236, 140, B.B. 187, C.C. 167, 208, 206, 18, 28, 266, 265, 251, 191, 218. We further determine, and find as a fact, that the *25 following four described royalties did not become worthless during 1938 or 1939: Royalty No. 69 (Exhibit No. 7), having a cost of $225, was charged off by the petitioner in 1938 by reason of a dry hole drilled by the Gulf Oil Corporation at a distance from petitioner's royalty of more than two miles in a southwesterly direction in December, 1938. The map does not show any producing well or any other dry holes in that area at the close of 1938. In 1941, however, another dry hole was drilled directly on petitioner's royalty interest by "Sinclair-Gulf, et al." to the Wilcox formation, 7,630 feet. This royalty was on a tract leased by Gulf Oil Corporation in 1935 for a period of ten years. Rental under the lease was paid by Gulf Oil Corporation to June 25, 1942. Petitioner received a total of $45 rentals from his royalty. Because of the distance from petitioner's royalty of the dry hole upon which he relied for his determination that the royalty became worthless in 1938, and in view of the fact that reputable operators, including the Gulf Oil Corporation which had drilled this dry hole, considered that the royalty was suitable for further development and were willing to stand the cost *26 of further drilling, we think that the royalty became worthless in 1941 and not in 1938 and that it was improperly charged off by the petitioner in 1938. Royalty No. 105 (Exhibit No. 9), having a cost of $265, was located in Sumner County, Kansas. It was charged off by the petitioner in 1938 on account of a dry hole drilled about half a mile directly north of the royalty in April of that year. The map shows, however, that a dry hole within a short distance of the royalty offsetting the southeast corner had been drilled in 1937. Petitioner testified that at the time he charged off the royalty in 1938 he had no knowledge of the nearer dry hole and that the royalty should have been charged off in 1937. The royalty became worthless, we think, in 1937. Royalty No. 142 (Exhibit No. 10), having a cost of $875, was located in Logan County, Oklahoma. It was acquired by the petitioner in 1934. It was charged off in 1938 on account of a dry hole drilled about a mile north of the royalty in June, 1938. The map shows, however, that in May, 1937, a dry hole was drilled only a short distance from this royalty in the next adjoining quarter section to the southwest. We think that the nearer dry *27 hole drilled in 1937 determined the worthlessness of the royalty in that year. Royalty No. 165 (Exhibit No. 16), having a cost of $275, located in Oklahoma County, Oklahoma was acquired by petitioner in April, 1935. In May, 1935, a dry hole was drilled to the Wilcox sand, to a depth of 6,456 feet, on the adjoining quarter section and less than one-half mile due west of the petitioner's property. In April, 1939, another dry hole was drilled about half a mile to the southeast. Petitioner charged off his royalty in 1939. He testified in this proceeding: * * * Evidently I purchased that royalty on the strength of this dry hole in Section 2 [the one drilled in May, 1935] being drilled but overlooked charging it off at the end of that year and I considered myself quite lucky to have another chance to charge it off by the dry hole in Section 12 [the one drilled in April, 1939]. [Opinion] Obviously petitioner has misconceived his rights under the loss provisions of the statute. Loss deductions on account of worthless property must be taken in the year when the property actually becomes worthless. It is apparent that the royalty actually became worthless when the first and nearer dry *28 hole was completed in May, 1935. It is on the basis of such dry holes on or in the vicinity of the royalty that petitioner is claiming loss deductions on all but one of the royalties involved in this proceeding. It is stipulated that all of these dry holes, as well as the producing wells shown on the maps, were bottomed in sedimentary beds when drilling ceased. The only royalty that was charged off for reasons other than the drilling of a dry hole on or nearby was royalty No. 28 (Exhibit 15), having a cost of $884.94. It was located in section 35, township 11 north, range 6 east, Seminole County, Oklahoma. It embraced a 40-acre tract adjacent to the Keokuk pool. Most of the producing wells in this pool are operated by the Carter Oil Co. Rental was paid by the Carter Oil Co. to petitioner and others on account of their royalty interests in the tract. In lieu of drilling an offsetting well on the property Carter Oil Co. agreed to pay petitioner and others as an "offsetting royalty" a certain percentage of the production from one of the producing wells directly to the east. This offset royalty was paid from some time in 1937 until March 1, 1939. Because of the low production of the *29 offsetting wells, the Carter Oil Co. was unwilling to continue payment of the offset royalties and in that year forfeited its lease on the tract on which petitioner's royalty was located. The evidence is that petitioner's royalty interest became worthless when the Carter Oil Co. ceased its offset royalty payments and abandoned its lease. We think that petitioner was justified in charging off the royalty in that year. With the four exceptions referred to above, we think that the evidence as a whole supports the petitioner's contentions that the royalty interests involved in this proceeding became worthless during the years when claimed. The cost or other adjusted basis of each of such royalties is deductible in petitioner's returns for those years. See , and Decision will be entered under Rule 50.